```
 1              BEFORE THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,        .
                                      .  Case Number 22-cr-189
 4            Plaintiff,              .
                                      .
 5       vs.                          .
                                      .  Washington, D.C.
 6   LEVI GABLE,                      .  January 17, 2023
                                      .  11:04 a.m.
 7            Defendant.              .
     - - - - - - - - - - - - - - - -

 8

 9                  TRANSCRIPT OF SENTENCING HEARING
                 BEFORE THE HONORABLE JIA M. COBB
10                  UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the United States:      JASON MANNING, ESQ.
                                 Department of Justice
14                               Criminal Division
                                 Fraud Section
15                               1400 New York Avenue Northwest
                                 Washington, D.C. 20005
16

17   For the Defendant:         STEPHEN MERCER, ESQ.
                                 RaquinMercer LLC
18                               50 West Montgomery Avenue
                                 Suite 200
19                               Rockville, Maryland 20850

20

21   Official Court Reporter:    SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
22                               Room 4704-B
                                 Washington, D.C. 20001
23                               202-354-3284

24

25   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
```

P R O C E E D I N G S

(Call to order of the court.)

COURTROOM DEPUTY:  Your Honor, we are on the record in Criminal Case 22-189, United States of America versus Levi Gable.

Starting with the government counsel, please approach the podium and state your appearance for the record.

MR. MANNING:  Good morning, Your Honor.  Trial Attorney Jason Manning for the government.  Thank you.

THE COURT:  Good morning.

MR. MERCER:  Good morning, Your Honor.  Stephen Mercer for Levi Gable.

THE COURT:  Good morning.  And good morning, Mr. Gable.

THE DEFENDANT:  Good morning.

PROBATION OFFICER:  Good morning, Your Honor.  Jessica Reichler on behalf of the United States Probation office.

THE COURT:  Good morning.

We are here for sentencing this morning for Mr. Gable, who has pled guilty to one count of entering and remaining in a restricted building.

I have received and reviewed the presentence report.  I've received a sentencing recommendation from the Probation Office, which I will share with the parties during the course of the sentencing.  And I've also received and reviewed the documents

1   submitted by both parties in advance of the hearing.  That would

2   include the sentencing memoranda from the government and

3   Mr. Gable's memoranda and submissions.  I also reviewed the

4   signed plea agreement and the Statement of Offense that

5   Mr. Gable signed.

6        So first, let's just confirm whether or not there are any

7   remaining objections to the presentence report.  Mr. Manning,

8   does the government have any objection to any of the factual

9   determinations set forth in the report?

10            THE DEFENDANT:  No, Your Honor.

11            THE COURT:  Okay.  And Mr. Mercer, I did get

12   Mr. Gable's document indicating the objections or the factual

13   objections that he had to the presentence report.

14        Is there anything that's remaining that you believe is

15   material?

16            MR. MERCER:  I think the material changes were made.

17            THE COURT:  Okay.  So do you have any disputes with

18   any of the material facts in the presentence report or any

19   objections that you want to state on the record?

20            MR. MERCER:  No objections, nothing material.

21            THE COURT:  Okay.  And Mr. Gable, let me ask you, are

22   you fully satisfied with Mr. Mercer's services in this case?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  Okay.  You can either step up to the

25   podium or speak into the microphone.

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And do you feel that you've had enough

3    time to discuss with him the presentence report and the papers

4    that were filed by the government and to prepare for this

5    hearing today?

6          THE DEFENDANT:  Yes, Your Honor, I do.

7          THE COURT:  Okay.  And Mr. Mercer, you've read the

8    presentence report with Mr. Gable?

9          MR. MERCER:  Yes.  We've read it together.  I note

10   he's reviewed it independently.  I've also reviewed with him the

11   conditions of supervised release as well that are a part of the

12   presentence report.

13         THE COURT:  Okay.  So given that there are no

14   objections to any of the factual determinations in the report, I

15   will accept and adopt the presentence report as my findings in

16   the case without further modification.

17      Second, with respect to the presentence report, I just want

18   to make sure that we're all on the same page about the

19   guidelines and the calculations.

20      So the offense level, the applicable guideline in this case

21   is Section 2B2.3.  There's a base offense level of 4.  This case

22   does involve an offense-specific level adjustment of two levels

23   being added because the trespass at issue occurred on a

24   restricted building or ground.  But then the government has

25   agreed that Mr. Gable did demonstrate acceptance of

responsibility.  That entitles him to a two-level reduction

under 3E1.1(a).  Therefore, the total offense level is 4.

Mr. Manning, are you in agreement with that?

MR. MANNING:  Yes, Your Honor.

THE COURT:  And Mr. Mercer?

MR. MERCER:  Yes, Your Honor, we agree.

THE COURT:  And then turning to Mr. Gable's criminal

history category, based on the presentence report investigation,

he has one prior conviction that gets scored, and he is --

therefore has a criminal history point subtotal of 3.

Mr. Manning, is that your understanding as well?

MR. MANNING:  Yes, Your Honor.

THE COURT:  And Mr. Mercer?

MR. MERCER:  Yes, criminal history category II with

the three points.

THE COURT:  Yes, and so his criminal history category

is II.

So based on that offense level of 4 and a criminal history

category of II, the presentence report calculates the applicable

guideline sentence range to be between zero and six months of

imprisonment, a one-year supervised release, fine range between

$500 and $9,500.

Mr. Manning, is that your understanding as well?

MR. MANNING:  Yes, Your Honor.

THE COURT:  And Mr. Mercer?

1          MR. MERCER:  Yes, it is.

2          THE COURT:  Okay.  And having reviewed the presentence

3   report, I understand -- I believe the parties agreed to this as

4   a part of the plea agreement, that there are no departure

5   grounds applicable in this case.

6       Is that correct, Mr. Manning?

7          MR. MANNING:  Yes, Your Honor.

8          THE COURT:  And Mr. Mercer?

9          MR. MERCER:  Yes.

10          THE COURT:  Okay.  So turning to the framework that I

11   use -- and Mr. Gable, for your benefit, I just went through to

12   confirm that we were all on the same page about kind of the

13   range that the guidelines calls for.  But I have an independent

14   obligation, apart from what the guidelines recommend, to

15   consider the factors in a statute, we call it 3553, which asks

16   me to consider what the guidelines call for but also asks me to

17   consider a number of things about the offense, about your

18   background and characteristics, and to decide what the

19   appropriate sentence is in this case.

20       The charge that you pled guilty to has a max term of one

21   year of imprisonment, a term of supervised release of no more

22   than one year, a maximum fine of $100,000, and you would also be

23   required to pay a $25 special assessment, which is mandatory.

24       So before I go through the factors and consider what the

25   appropriate sentence is in the case, I do want to give everyone

1    an opportunity to speak.  So Mr. Gable, I'm going to hear from

2    the attorneys first, and then if you wish to speak to me and

3    tell me anything that you want me to consider before I impose

4    sentence, I will hear from you.

5        So I will start with the government, Mr. Manning, if

6    there's anything that you want to say in support of the

7    government's sentencing recommendation.

8            MR. MANNING:  Thank you, Your Honor.

9        If it would please the Court, I will just briefly touch on

10   the points that I believe are not in dispute between the

11   parties, one minor point that is in dispute, and then I will

12   move to some brief points on our advocacy for the

13   recommendation.

14       Between the government's submission and the defense

15   submission, there's really no dispute here regarding the offense

16   conduct and the facts of Mr. Gable's participation in the

17   Capitol riot and his specific contribution there on January 6th.

18   There's also really no dispute, as the government sees it,

19   between the portrayal of the history and characteristics of the

20   defendant and that that the government seeks.

21       The government does not contest that since the defendant

22   served his term of incarceration and came out of prison in

23   approximately 2010 or '11, that he's made a meaningful

24   contribution to his family business and that he has not -- and

25   that he's made a meaningful contribution to his family as a

1  family and that he has not incurred any additional criminal

2  history.  There's no dispute on that.  And the government has

3  also read closely all the letters submitted in support of the

4  defendant.

5      One small dispute that the government calls attention to is

6  related to the defendant's compliance with the terms of his

7  pretrial supervision.  The government notes that in paragraph 9

8  of the Pretrial Services report, as the government reads it, it

9  reports that the defendant has been inconsistent with the terms

10  of compliance and that he has adopted an attitude of viewing the

11  pretrial service supervision as an inconvenience for him.

12      The government agrees with the defense that there's been

13  no, you know, material violations of those terms or anything

14  like that, but we do think the point about his inconsistency and

15  attitude toward it is important as we think about what the

16  appropriate sentence in this case would be.

17      Turning to the government's recommendation, primarily to

18  serve the purposes of specific and general deterrence and to

19  promote respect for the law, which is wrapped up in the concept

20  of general deterrence, the government submits that a custodial

21  sentence is warranted here.  The government respectfully

22  recommends 90 days of incarceration, which would be the midpoint

23  of the guidelines range, together with the community service and

24  supervised release and the $500 fine set forth in its

25  memorandum.

1    Starting with the need for specific deterrence, the

2    defendant by his own admission on January 6, 2021, came up the

3    west front, which was the scene of some of the most violent and

4    dangerous conduct on January 6th, he came up the west front, and

5    by his own admission, he saw violence between police officers

6    and protestors.  By his own admission to the FBI, he was aware

7    of gas munitions being used by the Capitol Police and other

8    police to deter rioters from going forward and advancing towards

9    the building.

10    Nevertheless, in that moment, the defendant made a choice

11    to go forward, to cross the police lines, to advance up the

12    Capitol steps, and to breach through the Senate Wing Door within

13    six minutes of the initial breach of the building.

14    The government submits that particularly from this

15    defendant's particular experience in the criminal justice

16    system, he should have known better.  He should have known

17    better in that moment when he had a choice to turn away from

18    participating in this mob and furthering the riot or had a

19    choice to join it and make the riot, you know, marginally more

20    difficult for all trying to control it.  He had a choice to

21    make.  He chose to go up the stairs and into the building and to

22    stay in the building for nearly 30 minutes.

23    Not only that, as shown in the government's sentencing

24    submission, he posted to his Facebook page videos of the

25    rioters, including videos of rioters taunting the Speaker of the

House Nancy Pelosi.  The government submits this evidence shows the defendant celebrating his choice to participate in this riot.

The government recognizes that for first-time offenders there can be instances where a noncustodial sentence serves as a sufficient wake-up call to specifically deter them from future participation in crime.  The defendant here is not a first-time offender, and a noncustodial sentence here does not seem adequate to provide the specific deterrence that's necessary here.

With respect to general deterrence, this is a point the Court is well familiar with.  We won't belabor it, other than to say that we join the statement of Judge Nichols and others that would-be rioters must be deterred, and particularly for someone who joined -- someone who breached the Capitol within the first six minutes, was a part of that first wave of rioters.

And for a defendant who has the criminal history of this defendant, a noncustodial sentence simply doesn't promote adequate respect for the law.  It doesn't send the message that would-be rioters need to receive in this moment to be deterred if we're going to avoid future January 6s.

We also submit that -- to go back to the earlier point, that the defendant's view of his pretrial supervision as a burden, as an inconvenience gives the government concern that the noncustodial aspects of a sentence, be it community service

or probation, might not adequately be taken seriously by this defendant.

Now, one point that the defendant alludes to at least in the defense submission is that to his credit the defendant is the vice president of a seemingly thriving business with 35, I think was the number, of employees who depend on him.  And again, that's to his credit.  We don't dispute it.

But we can't agree with the argument that his responsibility in the company somehow warrants a different sentence for him than would be warranted for an otherwise similarly positioned defendant.  There simply cannot be two different sentencing standards, one for business executives and one for everybody else.

So in summation, Your Honor, the government respectfully submits that a midpoint of the guidelines sentence, 90 days' incarceration, together with one year of supervised release, the $500 in restitution, and the 60 hours of community service would be an appropriate sentence here.

Thank you.

THE COURT:  Thank you.

Mr. Mercer?

MR. MERCER:  Thank you, Your Honor, and good morning.

I would like to focus my brief comments on really emphasizing four points.

One is an individualized assessment of Mr. Gable's actions

on January 6.  And of course, under 3553(a), that's the lead factor, an individualized assessment of his actions on that day.

The second point, Mr. Gable's personal characteristics, which I maintain are better defined by his dedication to family, work, and community than by his 2006 conviction.

I also want to touch briefly on deterrence, both general and specific, and explain why Mr. Gable is a low risk of recidivating, I think no more than someone who has no criminal history.

And also, the fourth point being that incarceration doesn't offer a means to provide services that are in need to Mr. Gable. And, Judge, he has suffered substantial collateral consequences which have enhanced the penalties that he has already received.

I will start with the first point about individualized assessment, which I think is the most important factor in sentencing.  It's certainly the lead factor, even before personal characteristics.

Now, to be sure, the government notes that Mr. Gable entered the Capitol building within six minutes.  I will note, however, that the perimeter at Peace Circle was breached by the Proud Boys or the different extremist groups that Mr. Gable is not affiliated with as early as 1:00, according to the January 6th Committee report.  And that was, of course, when Mr. Gable was at the political rally, which was by the Washington Monument and closer to the White House.

1    Now, I've watched this surveillance video internal of the

2  people coming through the Senate West Wing Door.  And of course,

3  and we note this, the windows on either side of the door are

4  broken.  The windows on the door itself are broken.  The door is

5  open.

6    By my count, I got up to at least 300 people who went

7  through those doors before Mr. Gable.  And before Mr. Gable

8  entered, you can also see, because there were different access

9  points to the Capitol, there was throngs of people coming down

10  the hallways in both directions.

11    So I don't think that it's necessarily fair to characterize

12  Mr. Gable as at the front end of this.  I mean, there were

13  hundreds of people before him who entered.

14    I think what defines Mr. Gable's actions on that day is an

15  absolute lack of any preparation or planning to participate in a

16  riot.  There was no intent on his part to start that day and to

17  end that day in a riot.

18    I mean, many people that have been before the Court have

19  arrived at the protest wearing body armor, carrying weapons,

20  carrying signs or flags, carrying bear spray, face shields, all

21  of those items that would indicate someone was anticipating or

22  preparing to be part of a riot.

23    And that just doesn't define Mr. Gable.  Nothing of that

24  sort was he involved with at all.  He went from the Capitol to

25  the White House, and it was a riot, and there's absolutely no

question, and this is why he has pled guilty.  And you will hear
from him directly.  He made an enormous error in judgment in
getting caught up with that crowd and entering the building.

Now, he remained in the building for approximately 30
minutes.  There was no property damage.  He was not verbally
assaulting anyone.  He wasn't getting into any confrontations
with officers.  He was -- and you can see this in the
photographs that have been submitted.  He's basically walking
around and taking video or pictures or documenting it.

There are certainly people around him chanting.  I've
listened to the audio, because on his phone video there's not
just the video but the audio track as well.  I don't hear him
chanting, but he's certainly around people who are chanting.
But I don't see anything in the videos that indicate that he was
encouraging or inciting anything beyond what was happening with
him sort of walking through the Capitol building, which in and
of itself was disruptive, we understand that, of the democratic
process.

But in terms of a heightened level that warrants a sentence
of incarceration, I would submit that an individualized
assessment of his actions on that day overall do not support
incarceration.

Now, in terms of the second point, his personal
characteristics, family, work, and community, I mean, he at a
very young age went into a federal correctional institute, an

FCI, medium security, 20 years old.  And that experience, while he is not grateful for it, he does welcome that it forced him to internalize and to change the arc of his life.

One of his comments that he noted to me in explaining the experience of being in an FCI at that age was -- he was there for over five years.  He saw about half the people who finished their sentence come back.  He saw that cycle of recidivism.  And he absolutely pledged that would not be him and it would not define him.

And when he finished serving his sentence and he was on supervised release, his supervised release was terminated early for compliance, and he committed himself to work.  He married his wife, Anna Gable, who is here in the courtroom.  They have a ten-year-old son.  His father and his mother are also here.

Levi Gable began to work in the family business.  And he took it to new levels.  At some point his father had some health limitations that prevented him from really managing it.  It's a utility excavation company.  So they're doing trench work for laying fiberoptics and cables for utility companies.  And so there's anywhere from 15 to 20 jobs being managed at a time.

He's also very much involved in his community, particularly with his son's activities as well.  And those really define who he is and not the 2006 conviction.

And I would submit, Your Honor, that -- and I cite to a report on recidivism that looks at data overall.  But I don't

think there's any greater risk for Mr. Gable committing an

offense like that which he was convicted in 2006 than someone

without a criminal history.  I just don't see that there is any

serious risk of recidivism for that type of offense.  And

certainly, this type of offense, the instance offense, is very

much unlike that.

And insofar as deterrence, both general and specific, the

punishment that Mr. Gable has already suffered in terms of the

conviction, in terms of the pretrial release, in terms of if the

Court were to impose a period of probation, restitution, the

special assessment, all of those direct consequences of the

sentence are powerful, specific deterrence and, I think, given

an individualized assessment of his actions, also is sufficient

for general deterrence as well.

I would note, in addition to the specific deterrence

factors I'm citing, the collateral consequences for Mr. Gable.

As Your Honor, I'm sure, knows, when arrests are made of

January 6 defendants, there's typically a lot of local media

that covers the event.  And there certainly was here.  And that

really impacted Mr. Gable on multiple levels, both in terms of

his reputational standing within the business community, with

his family.  I mean, it put at risk so, so much for him.

And that is a very real collateral consequence, the impact

of this case, and a very powerful, specific deterrent not to

engage in that behavior.

1     And I will note, Your Honor, that if you look at -- and

2     there were a rather large number of letters submitted here, but

3     one I will call the Court's attention to was in our index number

4     24, a letter from Mr. Wellemeyer, who was very critical of

5     Mr. Gable's -- for being involved.

6     And what that really shows is that Mr. Gable is not someone

7     who is in sort of an echo chamber.  I mean, his business, his

8     responsibilities bring him into contact with a range of diverse

9     views within his community.  And he has really heard from his

10    community about his involvement in this offense.

11    And I certainly maintain that incarceration is not

12    necessary to specifically deter Mr. Gable from engaging in any

13    sort of conduct like is involved in this case.

14    And, Your Honor, I will also note, in terms of need for

15    services only available through incarceration, I don't believe

16    that there are services that he would need to be incarcerated to

17    receive.

18    I do take some issue, of course, with the government's

19    characterization of his compliance under pretrial supervision.

20    He is being compliant.  The reports reflect that.  And paragraph

21    9, which notes his overall compliance has been inconsistent, is,

22    of course, citing to the positive test results for the illicit

23    substances, and those were prescribed substances.  Mr. Gable

24    notified them up front.  So I don't think that's a fair

25    characterization to say that he's been inconsistent.

1    I don't, frankly, believe it's very helpful to the Court

2 for these subjective assessments of well, he shows an attitude

3 that this is inconvenient for him.  I don't know any defendant

4 that pretrial supervision is convenient for.  It's not designed

5 to be convenient.  And Mr. Gable has taken many steps

6 affirmatively to -- while he's been under pretrial supervision.

7    And I would suggest to the Court that he has not displayed

8 any sort of entitlement.  He recognizes the vulnerability that

9 he has placed himself at and respects the authority of the Court

10 and the authority of Pretrial Services and has -- and has

11 complied with the conditions of his release.

12    So for all of these reasons, Your Honor, and those further

13 reasons we state in our memorandum, I do ask the Court to impose

14 a probationary sentence as sufficient but not greater than

15 necessary to accomplish the purposes of sentencing.  I believe a

16 sentence of incarceration would create a disparity with other

17 similarly situated defendants and that the punishment is just of

18 probation.

19    Alternatively, if the Court believes a higher level of

20 restriction is called for, then we would ask for home

21 confinement, a period of home confinement as a substitute for

22 incarceration, which the guidelines do recognize as an

23 appropriate means.

24    And that would, frankly -- and there's a practical reason

25 for that, because if he's in home confinement, he is able to at

1    least remotely monitor and manage the many projects that his

2    company works on and that so many people depend on him to do.

3    Whereas, of course, if he is incarcerated, he doesn't have that

4    means to even remotely manage that work.

5         So I appreciate the Court's attention very much.  Thank

6    you.

7              THE COURT:  Okay.  Thank you.

8         Mr. Gable, you're not required to but you can if you want

9    to step up and say anything.

10             THE DEFENDANT:  Thank you, Your Honor.

11        I'd like to start out with thanking you for allowing me the

12   time to speak here today and be in person and address the Court

13   and yourself personally.

14        Words could not express the level of regret that I have for

15   being a part of what happened on January 6th.  I know that it

16   will be a dark spot on my record moving forward, both personally

17   and professionally, for the rest of my life, irregardless of how

18   this all plays out today, and I'm deeply sorry that that

19   happened.

20        To my family that's here today, my wife and my parents, I

21   feel a tremendous amount of guilt for putting them in this

22   situation.  I know that they should be my number 1 priority in

23   everything that I do, you know, to be present and to be a father

24   and a husband and a son, and as someone who is managing our

25   businesses, I neglected that duty when I made these decisions,

1    and I sincerely regret that.

2         Your Honor, in -- on January 6th, I made the terrible

3    decision to follow the mob and enter into the Capitol, and I

4    know undeniably that that was absolutely wrong.  And my actions

5    and my involvement in that day is inexcusable, and I'm prepared

6    to accept any consequence that you seem -- that you deem

7    necessary for that today.

8         Ever since January 6th and up until the time that I was

9    arrested, I've spent a lot of time looking over my shoulder.  I

10   knew that it was wrong when it happened, and I just had a

11   feeling that sooner or later it was going to catch up to me.

12        And so when the FBI came and interviewed me at my work, I

13   should have been prepared to handle that in a better way, and I

14   just honestly freaked out and went into full defense mode, and I

15   kind of saw everything that I had worked for over the last

16   decade, you know, from my family, my wife, our son, the

17   businesses that we've started or grown kind of slipping through

18   my fingers.  And I lied, and I know that I shouldn't have done

19   that.  And I regret that caused the government any additional

20   effort or inconvenience as far as it pertains to my charges.

21        But in some way, being arrested was a bit of a relief, a

22   little bit of a weight lifted off my shoulders.  It was

23   something that I knew that was just kind of hanging out there.

24   And every time I -- I just didn't know what was going to come

25   around every corner.  And in a lot of ways, being done with this

1  here today, like I said, regardless of what the decision is, it

2  will be another weight lifted off of my shoulders, that I can

3  start to look towards the future rather than kind of dwelling in

4  my mistakes that I've made in the past.

5       We've spent some time talking about the mistake that I made

6  when I was a young man.  I just wanted to take this time to say

7  to you that having served a substantial amount of time in prison

8  does not hinder me from realizing the magnitude of what's going

9  on here today.

10      At the time I really didn't have anything to lose, you

11  know.  I was 20 years old and thought I knew everything and

12  arrogant and made a horrible decision, and it's not one that I

13  want to stand here and try to mitigate today, because it was

14  certainly a horrible decision.

15      But having gone through that, I think I came out a better

16  man, and whenever I came out, there was a desire, a fire lit

17  within me to succeed and to prove everybody wrong, and that's

18  kind of what I've done over the last ten years.  I think I've

19  done everything that I can to prove everyone wrong, including

20  myself even sometimes.

21      So today I stand here before you fully humbled, and I know

22  that I do have a tremendous amount of things to lose.  I've got

23  family, my wife that I've been married -- we've been married now

24  for ten years, and my ten-year-old son, who is here as well, my

25  family, the support of my family to lead our businesses and our

family and make positive decisions.  We're in the middle of building or forever home right now along with my mom and dad and my other brother.  The businesses that I'm responsible for and run along with the other companies that I've started, three businesses that we've started here within the last couple of years and a small company that my father and I purchased about a year ago that we're trying to get put onto the right course.

So I certainly can understand the magnitude and the severity of what brings us here today without necessarily having to go and serve time in prison.  Obviously, that's ultimately your decision, but I thought that that was something that might have been necessary to mention.

I can't disagree with what Mr. Manning said, and you may ask yourself, with all of the things you did have to lose and having the experience that you've had, you should have known better.  And there's absolutely no denying that.  I certainly should have known better, and I did, and I just made a tremendous lapse in judgment.  And I hope that the Court sees that more as a lapse in my character rather than being indicative of who I am overall.

So I would just ask that you kind of take all these things into consideration whenever you're considering an appropriate consequence, and from someone who should have known better but made a bad decision, we can hopefully move forward without making this a life-altering outcome.  But like I said, I am

prepared to accept whatever consequence you seem necessary
today.

THE COURT:  All right.  Thank you.  I appreciated
hearing from you, Mr. Gable, and from counsel.

I wanted to review the specific factors that I have to
consider under the statute in imposing a sentence, and the
statute I'm referring to, I mentioned earlier, is 18 U.S.C.
3553(a).  And my overall job here is to impose a sentence that
is sufficient but not greater than necessary to comply with the
purposes of sentencing.  And those purposes include that the
sentence has to reflect the seriousness of the offense, promote
respect for the law, provide just punishment for the offense.
It should also deter criminal conduct, protect the public, and
promote rehabilitation.

In addition to the guidelines and policy statements and the
purposes of sentencing, I also have to consider the nature and
circumstances of the offense, the need for the sentence imposed,
the applicable guidelines, history and characteristics of the
defendant, the type of sentences available, the need to avoid
unwarranted sentence disparities among defendants with similar
records who have been found guilty of similar conduct, and the
need to provide restitution.

And so I have considered all of those factors and would
like to discuss some of them now.  I've already gone through the
applicable sentencing guidelines ranges and also what the

1    statute calls for in terms of a maximum penalty.

2        With regard to the nature of the offense, I understand that

3    Mr. Gable didn't engage in any violent conduct and didn't

4    destroy any property.  And so I take that into account, although

5    I don't want to minimize the conduct here.  I still am having

6    trouble understanding what motivated you and others who entered

7    the Capitol to do what they did.

8        I always make a point of saying, because we have so many of

9    these cases, that I never am punishing anyone for their views or

10   what they believe.  I think that, you know, everyone has a right

11   to have whatever position they want to have about politics, and

12   I don't want you to think that anything here is targeting or

13   punishing you because of anything that you believe or thought.

14       But it is concerning to me that you were a part of a mob

15   that entered the Capitol in the way that you did.

16       But again, I have to balance that with my understanding of

17   the range of conduct that was committed on that day.  It is

18   important for my consideration here that you weren't violent,

19   that you didn't engage in any kind of altercations with police

20   officers, didn't destroy property.  So I do recognize that your

21   conduct was less severe than some of the other conduct that

22   occurred at the Capitol, and I've taken that into account.

23       Turning to your own characteristics, you know, we've talked

24   about your prior conviction.  It was for a serious offense.  So

25   you are coming to this court different than someone who has a

completely blank slate.  However, I do think it's commendable
that despite that period of incarceration, that you've been able
to complete your sentence for that crime, it was some time ago,
and to have a supportive family, work, not have any other types
of criminal conduct that brought you back to prison.  I do
commend you for that, and I think that is a positive
characteristic that I'm considering in terms of your history.

I do also pay close attention to how people behave while
the case is pending.  You have been compliant with probation,
and you have come to all the court hearings, and I get the sense
that you're taking the hearings and these proceedings seriously.
So I do consider that as well.

Again, I've already talked about the sentencing guidelines
and the types of sentences available.  I have gone through and
looked at the range of sentences.  There's a chart that the
government has created that lists for almost everyone who has
been sentenced what sentence they received.  I have looked at
that to ensure that any sentence I impose in this case wouldn't
create unwarranted disparities.  It's helpful but hard to know
the specific individual characteristics of everyone on the chart
just by virtue of the sentence.  But I do note that for this
charge, there are many individuals who have been sentenced to
probationary sentences.

I also said I would share with the parties the Probation
Office recommendation.  That recommendation was for a period of

probation for three years, 90 days' home detention, a $2,000 fine, and then, of course, restitution and special assessment that were already agreed to as a part of the plea agreement.

And that recommendation, just so you know, Mr. Gable, is based on the information that you already have.  It's based on the presentence report interview.  It's not based on any information that you or your attorney didn't have access to.

So considering all the factors, I do think that a probationary sentence is appropriate.  However, I think, given that there is some prior criminal history, that I would provide a short period of home detention.

Just so you're clear, home detention is different than home incarceration.  You can leave to go to work, to necessary medical appointments, to religious services.  But other than those kind of specific necessities, for the period that I'm sentencing you to home detention, you would have to be at home.

And I think that that combined with probation and the specifics that I will put on the record shortly meet all the purposes of sentencing.  I don't have any reason to think that you're going to be back before me, and I think that it's important that you maintain employment so that you can pay the restitution and the fine that I will be ordering.

So based on those factors, it's the judgment of the Court, Mr. Gable, that you be sentenced to a period of 24 months of probation.  The first 45 days will be home detention.  Again,

1  you can leave to work, medical appointments, other necessary

2  appointments as approved by your supervision officer.

3       You are further required to pay the mandatory $25 special

4  assessment to the clerk of this court, and that assessment is

5  immediately payable to the Clerk of the Court for the United

6  States District Court for the District of Columbia.  Within 30

7  days of any change of address, you must notify the Clerk of

8  Court of that change until your financial obligation is paid in

9  full.

10      Pursuant to your plea agreement, you're also ordered to pay

11  $500 in restitution to the Architect of the Capitol.

12      Based on the presentence report, it appears that you do

13  have the ability to pay a fine.  So I will order you to pay a

14  fine of $1,000.  And you must pay at least $50 a month until

15  that fine obligation is satisfied.

16      I will authorize supervision of your case to be transferred

17  to the Northern District of Oklahoma.  And while on supervision,

18  you are ordered to comply with all of the mandatory conditions

19  as well as the discretionary conditions that are all listed in

20  Part D of the final presentence report that I understand that

21  your attorney went over with you.  And so I'm incorporating all

22  of those conditions by reference here.

23      Again, they're all listed in the presentence report, but

24  just flagging that the conditions include maintaining full-time

25  employment and a mandatory drug testing condition.  Beyond the

1  specific drug testing conditions that are outlined in the

2  presentence report, any further drug testing will be at the

3  discretion of your supervision officer.

4      In addition, I will require you to complete 50 hours of

5  community service.  That can be something that you do with your

6  son, just something meaningful as a part of giving back to the

7  community in light of what occurred in this case.

8      Additionally, because there is a financial requirement, I

9  will order that at the probation officer's request, if they ask,

10  you must provide them any requested financial information and

11  authorize the release of any financial information, and I will

12  authorize the Probation Office to share any such financial

13  information with the U.S. Attorney's Office as related to the

14  financial conditions I've imposed.

15      Okay.  Mr. Mercer, do you have any questions about the

16  sentence?

17          MR. MERCER:  No, Your Honor.  I appreciate the

18  sentence.

19          THE COURT:  Okay.  Mr. Gable, you do have the right to

20  appeal the sentence if you choose to, of course subject to the

21  specifics in your plea agreement about what you cannot appeal

22  and what you can appeal.  If you do choose to appeal, you have

23  to file any appeal within 14 days after I enter judgment.

24      And as defined in 28 U.S.C. 2255, you would also have the

25  right to challenge the conviction entered or sentence imposed if

1  new and currently unavailable information becomes available to

2  you or on a claim that you received ineffective assistance of

3  counsel in this case.

4      If you're unable to afford the cost of an appeal, you are

5  permitted to request permission from the Court to file an appeal

6  and have the right to have an attorney assist you with an appeal

7  at no cost to you.

8      Okay.  Mr. Manning, does the government need to dismiss any

9  of the remaining charges at this time?

10          MR. MANNING:  Your Honor, the government moves to

11  dismiss Counts 2, 3, and 4 of the information.  Thank you.

12          THE COURT:  And that is granted.  So those counts are

13  dismissed.

14      Okay.  I don't think there's anything else we need to

15  discuss.  Mr. Gable, I do wish you luck in the future.

16          THE DEFENDANT:  Thank you, Your Honor.

17          THE COURT:  Thanks, everyone.

18      (Proceedings concluded at 11:51 a.m.)

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Sara A. Wick, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.



/s/ Sara A. Wick                    March 30, 2023

SIGNATURE OF COURT REPORTER         DATE